CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 31 2015

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAUL RAYMOND WEAKLEY, ) | CASE NO. 7:14CV00657 |
| ) | |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ) | |
| SIS LASTER, ) | By: Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendant. ) | |

Paul Raymond Weakley, a federal inmate proceeding pro se, filed this civil rights action under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 395-97 (1971), alleging that after the defendant prison official assigned him to the general population, despite known risks he faced there, inmates attacked and injured him. Upon review of the record, the court concludes that defendant is entitled to summary judgment, based on Weakley's failure to properly exhaust administrative remedies.

## I. Background

Weakley alleges the following sequence of events related to his claims. He entered federal prison on September 26, 2008, at the United States Penitentiary in Coleman, Florida ("USP Coleman"). Weakley told the intake officers several reasons that he feared other inmates might harm him if he was assigned to the general population at USP Coleman. Specifically, Weakley had cooperated with authorities in a highly visible criminal trial involving a violent prison gang known as the Aryan Brotherhood; he himself was rumored to have murdered one of the gang's members; and he was well known among federal prisoners from prior terms of incarceration he had served. The officers verified this information in Weakley's presentence investigation report ("PSR"), but assured him that he would be fine in general population.

Twenty days later, two inmates entered Weakley's cell, handed him a copy of his own intake screening form which identified Weakley as an informant, and struck him numerous times with a metal pipe and a similar object. Weakley was hospitalized for treatment of his resulting injuries.

On December 29, 2008, authorities transferred Weakley to a prison in Kentucky, known as USP Big Sandy. During the intake process, Weakley relayed his fears about being housed in general population, based on his past interactions with the Aryan Brotherhood and his being identified as an informant during the assault at USP Coleman. Despite these risk factors, and the known presence of many Aryan Brotherhood gang members at USP Big Sandy, Weakley was assigned to the general population there. On January 10, 2010, two inmates from another unit of the prison came to Weakley's cell, stabbed him more than 26 times, and left him for dead.

Weakley was thereafter transferred to a prison in southwest Virginia, known as USP Lee, arriving on July 7, 2010. During the intake screening process at USP Lee, Weakley related all of his previous problems to "SIS Officer Laster" and two other officers.[1] The officers told Weakley that there were "both skinheads and Odinists[2] in the general population at USP Lee." (Third Amend. Compl. 13, ECF No. 25.) Weakley said that inmates from these groups were among those responsible for the attack on him at USP Big Sandy. He told the officers that he was afraid USP Lee inmates from these groups would try to kill him, so he requested protective custody. The officers said that the SHU was overcrowded, and there was no room for him there. They told him that USP Lee was "special," different from other federal USP's, and that they would

---

[1] "SIS" in Laster's title apparently refers to the Special Investigative Service of the BOP. The court previously dismissed all claims against the other, unknown USP Lee officers referenced in the complaint, after Weakley failed to identify them for purposes of accomplishing service of process.

[2] According to Weakley, Odinists are "a hate-based quasi-religious group that is controlled by the [Aryan Brotherhood] and skinhead gangs." (Id. 18.)

2

"personally guarantee" Weakley's safety. (Id.) Weakley again requested protective custody, but his request was denied.

On July 10, 2010, inmates attacked Weakley and stabbed him in the neck four times. The attackers wielded a large metal knife, which Weakley managed to wrestle away from them to prevent being further harmed. A few weeks after the attack, Laster told Weakley that on July 9, 2010, he had received a telephone call from an inmate informant in the general population, stating that "white 'shot callers' were going to 'check-in'" Weakley.[3] (Id. 12.) Laster said that "he didn't think they would go so far as to murder [Weakley] so he didn't do anything about" the message. (Id.) In January 2011, authorities transferred Weakley to USP Tucson in Arizona, which he identifies as a "safe haven" prison for federal inmates who have cooperated with law enforcement. (Id. 6.)

Weakley's claims against Laster have a complicated procedural background. Weakley signed and dated his initial Bivens complaint on January 2, 2012, and mailed it to the United States District Court for the District of Arizona, which received and docketed the pleading on January 10, 2012. That initial complaint described only events at USP Coleman and USP Big Sandy and identified the defendants only as "numerous unnamed employees of the Federal Bureau of Prisons and agents and supervisors of the Federal Bureau of Investigations." (Compl. 1, ECF No. 1.) Weakley made only a vague reference to a "third attack at USP Lee" and stated his intent to amend. On February 9, 2012, the Arizona district court dismissed the initial complaint without prejudice, but did not dismiss the case, and gave Weakley 30 days to file an amended complaint to correct certain pleading deficiencies.

---

[3] According to Weakley, "'shot-callers' are inmates, sanctioned by the administration, who maintain[ ] discipline over other inmates through the use of violence." (Id. 19.) The term "check-in" means to "request protective custody." (Id.)

3

On March 26, 2012, the Arizona court received and docketed Weakley's first amended complaint.[4] Weakley named Laster as a defendant in the heading of the complaint and in claims 12 and 15, alleged substantially the same facts against Laster as already summarized here.[5] The Arizona court dismissed the first amended complaint without prejudice on June 28, 2012, upon finding that venue was improper in that state. Weakley filed a motion for reconsideration, which the Court granted. In the order vacating the June 28, 2012 dismissal order and reinstating the case, the court dismissed the first amended complaint without prejudice and allowed Weakley to file a second amended complaint, which he did. The Court dismissed that second amended complaint without prejudice on February 12, 2013, and allowed Weakley to file a third amended complaint, which he did; this submission was signed under penalty of perjury and dated on March 12, 2013, and docketed by the Court on March 15, 2013.

In his third amended complaint, Weakley asserted claims 1-21 under Bivens, regarding events at USP Coleman in Florida, USP Big Sandy in Kentucky, and USP Lee in Virginia. The Arizona court then summarily dismissed several claims and ordered Bivens claims 11, 17, 19, and 20 to be served on five defendants, including Laster. Defendants moved jointly for dismissal of the complaint. In December 2014, the Arizona court denied the motion to dismiss on jurisdictional grounds, but severed the Kentucky and Virginia claims into two separate actions and transferred the USP Lee portion of the case (Bivens claims 17 and 19) to this court as the most convenient forum where venue was proper. These claims assert that SIS Officer Laster was

---

[4] Weakley did not sign and date this complaint. On the same day, according to court records available online, however, the Arizona court docketed Weakley's separate petition under the Federal Tort Claims Act ("FTCA"), which he signed and dated on March 12, 2012. That FTCA action is currently pending before the Arizona district court: Weakley v. Unknown Parties, No. 4:12-CV-022-TUC-DCB.

[5] This first amended complaint included allegations concerning Laster's involvement in Weakley's initial assignment to the general population and Laster's failure to react to an informant's telephone warning before the July 10, 2010 assault, that "shot callers" planned to "check-in" Weakley. (First Amend. Compl. 9-10, 14-15, ECF No. 8.)

4

deliberately indifferent to Weakley's safety when he (1) received a phone message from an inmate informant that "shot callers were going to 'check-in' [Weakley,]" but failed to act to protect Weakley (Claim 17) and (2) denied Weakley protective custody despite his status as a criminal informant and the fact that he was previously attacked at other institutions (Claim 19).

The case is presently before the court on Laster's motion to dismiss or, in the alternative, motion for summary judgment. Laster argues that Weakley's claims should be dismissed as time barred under the applicable statute of limitations or based on Weakley's failure to exhaust administrative remedies, or that Laster is entitled to summary judgment on the ground of qualified immunity. Weakley has responded to these arguments, making the matter ripe for disposition.

## I. Discussion

### A. Standards of Review

A motion to dismiss tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). A complaint needs a short and plain statement of the claim showing that the pleader is entitled to relief and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ."; a factual basis for relief "requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (citation omitted). "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)). When the opposing affidavits and the verified complaint "present conflicting versions of the facts which require credibility determinations," summary judgment cannot be invoked. Davis, 600 F.2d at 460. Id.

### B. Statute of Limitations

Federal civil rights actions under Bivens or 42 U.S.C. § 1983 are governed by the statute of limitations for personal injuries in the state where the alleged constitutional violations occurred.[6] See Owens v. Okure, 488 U.S. 235, 239-40 (1989) (§ 1983); Reinbold v. Evers, 187 F.3d 348, 358 n. 10 (4th Cir. 1999) (Bivens). Virginia's applicable statute of limitations is two years from the time when an action accrues. Va. Code Ann. § 8.01-243(A).

A federal claim accrues when the plaintiff knows enough about the harm done to him to bring his lawsuit. See Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (regarding § 1983 claim accrual). A prisoner's federal civil claim is deemed filed for

---

[6] In the Bivens decision, the Supreme Court recognized a "damages remedy designed to vindicate violations of constitutional rights by federal actors." Hall v. Clinton, 235 F.3d 202, 204 (4th Cir. 2000). Because such a remedy is similar to an action against state officials under 42 U.S.C. § 1983, courts frequently rely on case law from § 1983 actions in resolving claims under Bivens. See Ashcroft v. Iqbal, 556 U.S. 662, 675-76 (2009) (finding that a Bivens action is the "federal analog to suits brought against state officials under . . . § 1983") (internal quotations and citations omitted).

6

purposes of a statute of limitations when he "delivers his pleading to prison authorities for forwarding to the court clerk." Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991) (citing Houston v. Lack, 487 U.S. 266 (1988)). As long as the complaint is thus deemed filed within the limitations period, the action is timely. Id.

Weakley knew sufficient facts about the harm done to him by Laster's alleged failures to protect him against inmate assault when the assault occurred on July 10, 2010, and within several weeks thereafter, when Laster told him about the informant's call. For purposes of this opinion, the court will assume that Weakley's claims against Laster accrued on or before August 1, 2010. From that date, he had two years (730 days) to file timely Bivens claims against Laster related to the July 2010 assault.

Weakley's initial complaint, filed January 2, 2012, merely stated that he had been assaulted a third time at USP Lee. It did not describe events there with any particularity or name Laster as a defendant. Therefore, the court cannot find that the initial complaint commenced Weakley's claims against Laster so as to toll the limitation period under § 8.01-243(A).

The court concludes, however, that Weakley's first amended complaint was sufficiently particularized to toll the limitation period. It listed Laster as a defendant, and claims 12 and 15 in that document stated substantially the same allegations as the two claims now before this court. Although Weakley did not sign and date the Bivens portion of his first amended complaint, the court finds that it must be deemed filed on March 12, 2012—the day that Weakley signed and dated the simultaneously submitted FTCA portion of his filing. At that point, only 589 days had elapsed from the time Weakley's claims against Laster accrued. Thus, the Bivens claims were timely filed under § 8.01-243(A).

7

Laster's time bar argument points to the Arizona court's dismissals of Weakley's first and second amended complaints and the fact that his third amended complaint was filed more than two years after his claims accrued. The dismissals were without prejudice, however, and were based on the form of the complaint, not on the adequacy of the factual allegations against Laster. The dismissals of the complaints also did not terminate the action itself, and under Virginia law, the action's pendency tolled the running of the limitation period. See, e.g., Va. Code Ann. § 8.01-229(E)(1) (explaining that if an action is initiated within the limitations period, "and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought . . . .").[7] For the reasons stated, the court will deny Laster's motion to dismiss Weakley's Bivens claims as time barred.

### C. Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil rights action concerning prison conditions until he has first exhausted available administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. Failure to follow the required procedures of the prison's administrative remedy process, including time limits, or failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar an inmate's § 1983 action. Woodford v. Ngo, 548 U.S. 81, 90 (2006). The § 1997e(a) exhaustion requirement applies to

---

[7] When a state's limitations period is applied to a federal civil rights action, the state's accompanying tolling rules must also be applied, unless they are inconsistent with federal law. Board of Regents v. Tomanio, 446 U.S. 478, 484-85 (1980) (applying state tolling laws in § 1983 action).

Bivens claims. Hill v. O'Brien, 387 F. App'x 396, 399 (4th Cir. July 12, 2010) (unpublished) (citations omitted).

The Federal Bureau of Prisons ("BOP") has established a four-tiered administrative remedy process for a federal prisoner "to seek formal review of an issue relating to any aspect of his/her own confinement." See 28 C.F.R. §§ 542.10. An inmate should first seek to resolve his complaint informally at the institutional level by presenting the issue to staff on the required form, commonly known as a BP-8. 28 C.F.R. § 542.13. If unsatisfied by the response at the BP-8 level, within 20 days after the challenged incident, the inmate may file a formal written complaint to the warden on a BP-9 form, obtained from his counselor. 28 C.F.R. § 542.14. The inmate should receive a receipt for the remedy form, and then the warden or his designee has 20 calendar days to investigate the matter described on the BP-9 and provide a written response. 28 C.F.R. §§ 542.11(a)(2), 542.18. If not satisfied with the warden's response, the inmate has 20 days to submit an appeal on the appropriate form (BP-10) to the appropriate regional director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the BP-10 response has 30 days to submit an appeal on the appropriate form (BP-11) to the general counsel, who has 40 days to respond. 28 C.F.R. §§ 542.15, 542.18. A claim has not been administratively exhausted until the Office of General Counsel ("OGC") responds on the merits to the inmate's BP-11, or fails to respond within the time allotted for response. 28 C.F.R. § 542.18.

The BOP tracks its inmates' administrative remedies in its SENTRY computer database. See 28 C.F.R. § 542.18 ("If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.") According to Sharon Wahl, a BOP paralegal who reviewed Weakley's records in SENTRY, while he was incarcerated at USP Lee from July 7 to December 14, 2010, he did not file any administrative BP-9 forms or appeals

9

about his claims in this lawsuit as necessary for proper exhaustion under the BOP's procedures.[8] Based on these records, Laster argues that Weakley did not properly exhaust available administrative remedies, his claims are barred under § 1997e(a), and they should be dismissed with prejudice.

A prisoner who did not properly exhaust all levels of the administrative remedies procedure may survive summary judgment by demonstrating that the grievance system was not "available" to him—by stating "facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished) (citing Moore v. Bennett, 517 F.3d 717, 725 (4th Cir. 2008)). Accordingly, a defendant is entitled to summary judgment based on plaintiff's failure to exhaust only if he can "show that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies." Hill v. O'Brien, 387 F. App'x 396, 399 (4th Cir. July 12, 2010) (unpublished).

In response to Laster's evidence of no proper exhaustion, Weakley contends that he exhausted all administrative remedies that were available to him.[9] After the assault at USP Lee on July 10, 2010, officials placed Weakley in a special housing unit ("the SHU"). Weakley

---

[8] Once Weakley reached USP Tucson, in January 2011, he filed BP-10 forms about the USP Lee staff's alleged failure to protect him. The regional director rejected Weakley's BP-10 appeals because they were untimely filed in the incorrect regional office and Weakley failed to state the relief he sought. Weakley then filed BP-11 forms, which were rejected on the same grounds. It is undisputed that these administrative remedy actions, dismissed on procedural grounds without consideration of the merits of Weakley's claims, did not constitute proper exhaustion of the BOP remedy procedures so as to satisfy § 1997e(a) requirements. Woodford, 548 U.S. at 83-84 (finding that "untimely or otherwise procedurally defective administrative grievance" does not comply with § 1997e(a)); cf. Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011) ("the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority") (emphasis added).

[9] Weakley's allegations about his exhaustion attempts at USP Lee are contained in several responsive submissions (ECF Nos. 58, 62, 88, 91), one of which is verified (ECF No. 62). Although Weakley does not title this submission as an affidavit or declaration, the court concludes that it must be considered as "the equivalent of an opposing affidavit for summary judgment purposes" on the exhaustion issue. Williams, 952 F.2d at 823.

10

alleges that he spent "weeks trying to discover the identity of his unit team," and as soon as he identified them, he tried to exhaust administrative remedies. (ECF No. 58, at 2.) He alleges that "[h]e properly filed both BP-8s and BP-9s requests with his correctional counselor to resolve issues" related to the July 2010 assault at USP Lee, but never received any responses. (ECF No. 62, at 2.) After the time for the warden to respond to the BP-9 had elapsed, Weakley allegedly asked his counselor (whose name he does not recall) for a BP-10 form so he could prepare an appeal to the regional director. The counselor allegedly refused to provide a BP-10 form, saying that this appeal would just be rejected because Weakley did not have BP-8 and BP-9 responses to attach to it. Weakley contends that without the statutorily required BP-10 form, the BP-10 appeal to the regional director, as well as the subsequent BP-11 appeal to the OGC, were not "available" to him for purposes of § 1997e(a).

In reply, Laster offers evidence that Weakley's account of his alleged exhaustion attempts at USP Lee is contrary to BOP policy and practice. Thomas Pulver, who was assigned as Weakley's correctional counselor at USP Lee, states that after five years, he does not recall specific interactions he had with Weakley. Pulver explains, however, that as a counselor, he kept a log of the remedy forms he issued to inmates; he submits a page of that log regarding remedies he issued between the dates of July 7 and November 10, 2010.[10] If an inmate had asked for a BP-8 form, Pulver would have documented in his log: (a) the inmate's name and register number; (b) the ID number of the BP-8 remedy form; (c) the date he gave that form to the inmate; (c) the date the inmate returned the BP-8 form to Pulver for filing; (d) the department designated to investigate and respond to the BP-8 complaint; (e) the date the form was provided to a staff member in that department; and (f) the date that staff member returned the BP-8. There

---

[10] (See Deft's Reply Ex. 1 Attach. 1(A), ECF No. 89-1) (U.S.P. Lee County, Virginia, 2010 – Unit H Informal Resolution BP-8/BP-9 Log) ("the log.")

11

is no set time limit for a staff member to respond to a BP-8 response. Pulver's log indicates, however, that staff responded to the BP-8 forms within two to seven days.

Pulver states that "[i]f informal [BP-8] resolution was not accomplished and the inmate desired to proceed to the formal remedy process," Pulver would then have: (g) issued that inmate a BP-9 form; (h) logged the date he issued the BP-9 form to the inmate; and (i) recorded the date the inmate returned the completed BP-9 form to Pulver for filing. Section § 542.14(b) indicates that if it takes "an unusually long period [for] informal resolution attempts" at the BP-8 stage, the inmate may request an extension of time in which to file his BP-9 form to the warden. See 28 U.S.C. §§ 542.15(a), (b). Laster also points out that if Weakley did not receive a response to his BP-9 form within the 20 days allotted under the regulation, he could proceed to file a BP-10 appeal to the regional administrator. See 28 U.S.C. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level."). Pulver's remedy log does not indicate that he issued a BP-8 form or a BP-9 form to Weakley for a complaint about the July 2010 inmate assault.

Weakley does not deny that Pulver was his counselor at USP Lee or that Pulver's log is an authentic record. He merely points to minor date discrepancies on Pulver's log and alleges that a counselor would not have had the computerized log with him to record forms he issued forms to Weakley in the SHU. However, Pulver's detailed log does, in fact, list a BP-8 form distributed to Weakley on September 24, 2010, for a complaint about SHU food.[11] Furthermore, Weakley's factual account in response to defendant's evidence is riddled with critical information gaps. Weakley does not does not allege or document: the approximate date(s) when he purportedly obtained or completed his BP-8 forms; the information he stated on each form;

---

[11] According to the log, Weakley returned the completed BP-8 about SHU food on September 27, 2010; the form was issued to staff that same day, and a response was returned on October 3, 2010; no BP-9 was issued.

12

how and when he delivered the completed forms to the counselor from the SHU; how long he waited for BP-8 responses; how and when he obtained and filed BP-9 forms from the counselor without any record of his having filed a BP-8 form; what he stated in the BP-9 forms to the warden; or why he does not have a receipt for those forms. Indeed, Weakley fails to state facts showing how he could have managed to file timely BP-8 forms and BP-9, when it allegedly took "weeks" after the assault for him to find someone to provide him BP-8 forms in the SHU.

Rather, Weakley contends that the BOP remedy procedures in general are not truly available, because officers rarely respond to inmates' BP-8 forms or BP-9 forms; in turn, he asserts that without BP-8 and BP-9 responses, BP-10 and BP-11 appeals are summarily rejected as defective and are, thus, unavailable. For example, he submits self-created documents purportedly showing that of 100 administrative requests (BP-9 forms) submitted on or before December 31, 2013, at Tucson Federal Correctional Complex ("FCC Tuscon"), 82 percent of those requests were never responded to by the designated prison official.[12] Even if proven true, this statistic, however, does not undercut in any way the accuracy of the BOP's administrative remedy record keeping or defendant's evidence. Moreover, Weakley himself was able to obtain and file BP-10 and BP-11 appeals at USP Tucson without BP-8 and BP-9 responses in hand; while these appeals were rejected, the lack of lower level responses was not cited as a reason for the rejection.

In short, Weakley's allegations and evidence simply do not undermine defendant's record evidence showing that Weakley never properly filed BP-8 or BP-9 forms at USP Lee as required for proper exhaustion. Finding that no reasonable fact finder could conclude from the evidence that Weakley properly exhausted administrative remedies or that he was prevented from

---

[12] Weakley states that he distilled this statistic from copies of the remedy index for the prison facilities of FCC Tuscon, obtained through a Freedom of Information Act request to the remedy coordinator at this complex.

achieving proper exhaustion through no fault of his own, the court will grant Laster's motion for summary judgment. Because it is clear that Weakley now has no further BOP administrative remedies available to him regarding his claims about the 2010 incidents at USP Lee, the court will dismiss these claims with prejudice.

### III. Conclusion

For the reasons stated, the court concludes that although Laster's time bar argument fails, he is entitled to summary judgment based on Weakley's failure to properly exhaust available administrative remedies in 2010 as required under § 1997e(a). Therefore, the court will dismiss Weakley's claims on this ground with prejudice. An appropriate order will issue this day.

The clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendant.

ENTER: This 31st day of August, 2015.

_____
Chief United States District Judge